**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HEIDI L. KELLY,               )
                                 )
              Plaintiff,      )
                                 )
          v.                 )
                                 )   Civil Action No. 19-204
LOUIS DeJOY, POSTMASTER    )
GENERAL, UNITED STATES     )
POSTAL SERVICE,[1]          )
                                 )
              Defendant.   )

## MEMORANDUM OPINION

### I.      INTRODUCTION

Plaintiff Heidi L. Kelly initiated this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, asserting that her employer, Defendant United States Postal Service ("USPS"), discriminated against her because of her sex and retaliated against her because she allegedly engaged in protected activity. Pending before the Court is Defendant's Motion for Summary Judgment and Motion to Deem as Admitted Defendant's Statement of Material Facts and Strike Plaintiff's Untimely Response to Defendant's Motion for Summary Judgment (Docket Nos. 28, 43), as well as Plaintiff's Motion for Partial Summary Judgment. (Docket No. 33). For the reasons that follow, Defendant's Motion for Summary Judgment and Motion to Deem as Admitted Defendant's Statement of Material Facts are granted, and Plaintiff's Motion for Partial Summary Judgment is denied.

---

[1]     Louis DeJoy, who is the current Postmaster General, is automatically substituted as the party defendant under Fed. R. Civ. P. 25(d)(1).

## II.   PROCEDURAL HISTORY

As alleged in the Amended Complaint filed on July 1, 2019, Plaintiff claims that Defendant "subject[ed] [her] to discriminatory harassment based on her gender . . . and retaliation" because she engaged in protected activity by providing a statement in connection with a co-worker's EEO complaint in February 2016 and by filing her own EEO complaint in May 2016.  (Docket No. 11, ¶¶ 6.a, 11, 12).   Plaintiff lists the following alleged "discriminatory events" in her Amended Complaint: her request for higher level details was denied; she was not selected for the EAS Leadership Development (ELD) Program in July 2016; she was informed that she was not approved for route examination training in July 2016; management conducted "climate surveys" in her office and did not properly defend her against other employees' complaints regarding the hostile working conditions in her office; and she was re-assigned to the Lyndora Post Office in September 2016.  (*Id.*, ¶¶ 6.b.1 – 6.b.5).

This case originally was assigned to the Honorable David S. Cercone.  Pursuant to the Case Management Order entered by Judge Cercone on August 22, 2019, any summary judgment motions were to be filed  by May 13, 2020, and were required to "comply with Local Rule 56.B." (Docket No. 17 at 2, ¶ A.7).  The Case Management Order further specifically provided that:

> Each motion for summary judgment shall comply with Local Rule 56.B. All such motions shall be accompanied by a concise statement of material facts to which the movant asserts there is no material issue for trial.  Each concise statement of material facts shall comply with Local Rule 56.B.1 and each numbered paragraph therein shall contain clear and concise references to the parts of the record relied upon to support it. All referenced parts of the record shall be presented in an appendix that complies with Local Rule 56.B.3.

(*Id.* at 3).  A response to a summary judgment motion was due within 28 days of service, or by June 10, 2020, and was required to comply with Local Rule 56.C.  (*Id.* at 2, ¶ B; 3).  To that end, the Case Management Order explicitly required that:

**All such responses/briefs in opposition shall be accompanied by a counter statement of material facts submitted in accordance with Local Rule 56.C.** All counter statements of material facts shall comply with Local Rule 56.C.1. **All counter statements shall correspond to the numbered paragraphs of the movant's concise statement on a paragraph-by-paragraph basis and shall address all facts which the respondent contends are contested or otherwise remain in dispute.** The counter statement likewise shall comply with Local Rule 56.B.1 and **each numbered paragraph shall contain clear and concise references to the parts of the record relied upon to support any counter statement of fact therein**. All additional parts of the record referenced in the counter statement shall be presented in an appendix that complies with Local Rule 56.B.3.

(*Id.* at 3-4) (emphasis added).

Critically, the Case Management Order made clear that "**in determining a dispositive motion the Court will assume that any actual facts identified in the concise or counter statement of material facts are admitted unless such facts specifically are controverted in the counter or reply statement of material facts**." (Docket No. 17 at 4) (emphasis added). This admonition is consistent with Local Rule 56.E which provides as follows:

**Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.**

LCvR 56.E (emphasis added). Finally, the Case Management Order cautioned that "the unexcused failure to file a motion or a response in a timely manner will result in appropriate sanctions, including the summary denial or granting of the motion." (Docket No. 17 at 4-5).

On May 13, 2020, Defendant filed a timely Motion for Summary Judgment, Memorandum of Law in Support of same, Concise Statement of Undisputed Material Facts and Appendix (Docket Nos. 28-31), all of which complied with the Case Management Order and Local Rule 56.B.1 – B.3. Defendant argues that summary judgment should be entered in its favor because

Plaintiff has failed to establish a prima facie case of gender discrimination or retaliation.  (Docket No. 29 at 7-9, 11-12).  Even if she had done so, Defendant contends that there were legitimate non-discriminatory and non-retaliatory bases for its employment actions, which Plaintiff has failed to rebut.  (*Id.* at 9-11, 12-17).

Plaintiff sought leave of Court for an extension of time to file a summary judgment motion by May 27, 2020.  (Docket Nos. 27, 32).  On that date, Plaintiff filed a Motion for Partial Summary Judgment and supporting brief, in which she asks the Court to apply the doctrine of collateral estoppel to findings made by an administrative law judge in her Merit Systems Protection Board ("MSPB") proceeding.  (*See generally* Docket Nos. 33, 34).  Plaintiff's Motion fails to comply with the Case Management Order and Local Rule 56.B.1 and 56.B.3 because it is not accompanied by a concise statement of undisputed material facts or an appendix.  In response, Defendant submits that Plaintiff's Motion for Partial Summary Judgment should be stricken and/or denied because of those deficiencies.  (Docket No. 36 at 2-3).  Even if Plaintiff's Motion were properly filed, Defendant argues that it should be denied on the merits because the MSPB judge ultimately found in Defendant's favor as to Plaintiff's claim of retaliation.  (*Id.* at 3-6).

Instead of taking any steps to remedy her non-compliance with the operative rules, Plaintiff instead asserts in Reply that her Motion "identified MSPB Judge Syska's findings and conclusions in support of Plaintiff's discrimination claims originally identified in EEOC proceedings and set forth in more detail in Plaintiff's Pretrial Statement with the same claim numbering; these proposed material facts were amply identified by reference to the Claims identified in [her] Pretrial Statement."  (Docket No. 37 at 1).  This procedure does not suffice, as it is fails to comport with the Local Rules of this Court or the Case Management Order.  Accordingly, it would be entirely proper to strike Plaintiff's Motion for Partial Summary Judgment because "[i]t is beyond question

that the District Court has the authority to strike filings that fail to comply with its local rules." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018).  Although the Court will not do so in this instance, Plaintiff's counsel is cautioned that compliance with Court orders and rules of procedure is not optional.

It is troubling that Plaintiff's non-compliance with the Local Rules of Court and the Case Management Order was not an isolated incident in this case.  First, without seeking leave of Court, Plaintiff filed an untimely Response to Defendant's Motion for Summary Judgment on July 18 and 21, 2020, well over a month after the June 10, 2020 deadline established by the Case Management Order.  (Docket Nos. 17 at 2; 40-42).  Second, and more critically, Plaintiff's Response fails to comply with the requirements of the Case Management Order and the Local Rules of Court.  Plaintiff's filings consist of a Response to Defendant's Motion for Summary Judgment Motion, an Appendix of Exhibits, and a supporting brief.  (Docket Nos. 40-42). Contrary to Local Rule 56.C.1 and the Case Management Order, Plaintiff did not file a responsive concise statement  "which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts."[2]

Given this significant deficiency, on July 23, 2020, Defendant filed a Motion to Deem as Admitted its Statement of Material Facts and to Strike Plaintiff's Untimely Response.  (Docket No. 43).  Once again, instead of seeking leave of Court to file the required responsive concise statement of material facts out of time, Plaintiff simply filed a response to Defendant's Motion in

---

[2]    The Local Rule requires that the party opposing summary judgment must respond to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety with appropriate reference to the record; and (c) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment.  LCvR 56.C.1.a. – 56C.1.c.

which she provides a "straightforward profile of this case" and submits that her pretrial statement, Motion for Partial Summary Judgment and "answer" to Defendant's Motion for Summary Judgment "advance the same set of facts" and Defendant "is not prejudiced in any way by timing issues." (Docket No. 45 at 2-3). Rather than correcting the glaring deficiency, Plaintiff broadly (and confusingly) states that she "didn't stipulate to any facts contrary to her Pretrial Statement and Partial Motion for Summary Judgment." (*Id.* at 3).

In this Court's estimation, Plaintiff's response to Defendant's Motion to Deem as Admitted its Statement of Material Facts is wholly insufficient and her ongoing failure and/or refusal to comply with the Case Management Order and the Local Rules of Court in this case is unacceptable.[3] Plaintiff's non-compliance was brought to her attention by Defendant's Motion filed in July 2020. As stated, Plaintiff did not file a motion requesting leave to file a conforming responsive concise statement of material facts out of time when the case was pending before Judge Cercone, nor did she do so at any time since the case was transferred to this member of the Court in September 2020. Given that Plaintiff has had ample time to seek to correct this matter and has

---

[3] Unfortunately, this case is not the first instance involving Plaintiff's counsel's failure to comply with the Local Rules of Court and other court orders concerning summary judgment practice. For instance, in *Bush v. Donahoe,* Civ. No. 11-1287, 2013 WL 12427801, at *1 (W.D. Pa. Apr. 22, 2013), Judge Lenihan granted the defendant's motion to strike the plaintiff's summary judgment opposition submissions for failure to comply with Local Rule 56 and the court's own order, but gave the plaintiff a final opportunity to file conforming documents. Subsequently, in *McGinnis v. Donahoe,* No. 2:12-cv-1880, 2015 WL 507043, at *1, n.1 (W.D. Pa. Feb. 6, 2015), Judge Conti observed that the plaintiff's counter-statement of material facts contained little citation to the summary judgment record and consisted of numerous argumentative statements in lieu of a response to the defendant's stated facts, and his brief in opposition was inadequate because it failed to respond to the defendant's supporting brief in any fashion. Judge Conti noted that the plaintiff's submissions were a clear violation of Fed. R. Civ. P. 56(c)(1) and this Court's Local Rules and explained that the submissions ordinarily would be stricken and the plaintiff would be ordered to respond in accordance with the rules and the court's case management order. (*Id.*). However, because the court independently reviewed the entire summary judgment record and concluded that the plaintiff's claims were meritless, the court did not order any further submissions, but cautioned counsel that any future submissions must comply with the Federal Rules of Civil Procedure, the Local Rules and the court's orders. (*Id.*).

As in *McGinnis*, the Court has reviewed the entire summary judgment record in this case and concludes, for reasons discussed herein, that Plaintiff's claims fail as a matter of law. As such, the Court will not order any further submissions, but once again cautions Plaintiff's counsel that any future submissions must comply with the relevant Rules and orders of court.

not done so, the Court will grant Defendant's Motion to Deem as Admitted its Statement of Material Facts.[4]

In so ruling, the Court observes that the Federal Rules of Civil Procedure and the Local Rules of Court allow facts to be deemed admitted where they are not properly opposed. *See* Fed. R. Civ. P. 56(e) ("If a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may: ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed – show that the movant is entitled to it."); LCvR 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."). These Rules "do not exist only as mere formalities; they serve an important purpose for the Court." *Cuppett v. Rite Aid of Pennsylvania, Inc.*, Case No. 3:18-cv-14, 2019 WL 5310578, at *1, n.1 (W.D. Pa. Oct. 21, 2019). Importantly, in the context of summary judgment practice:

> Concise statements of material fact isolate the disputed facts and assure that the parties have produced materials in the record to support their underlying claims. A party cannot oppose a motion for summary judgment on mere denials of material facts. Fed. R. Civ. P. 56(c). Failure to comply with these rules has consequences, as "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts ... will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E).

*Id.*

In *Cuppett*, Judge Gibson deemed all of the facts in the defendant's concise statement of material facts in support of its summary judgment motion to be admitted by the plaintiff where the

---

4   Defendant's Motion is denied as to the request to strike Plaintiff's untimely Response to its Summary Judgment Motion.

plaintiff failed to file a responsive concise statement which complied with the Local Rules of Court and the Chamber's Practice and Procedures. *Cuppett*, 2019 WL 5310578, at *1, n.1. Other courts in this District have deemed facts to be admitted when responsive summary judgment materials have failed to comply with the Local Rules of Court. *See e.g., Keith v. Charter Commc'ns., Inc.*, Civ. No. 1:18-cv-110, 2020 WL 2394997, at *2 (W.D. Pa. May 12, 2020) (deeming improperly responded-to facts in the defendant's concise statement as admitted); *Marinkovic v. Battaglia*, Case Nos. 1:14-cv-49 & 2:18-cv-388, 2019 WL 4600207, at *2 (W.D. Pa. Sept. 23, 2019) (deeming as admitted facts set forth in the defendants' concise statement of material facts due to the plaintiff's failure to comply with requirements of Local Rule 56); *Jankowski v. Demand*, Civ. No. 06-618, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008) (deeming facts in the defendant's concise statement as admitted where the plaintiff did not respond to same).

The same course is warranted here, given that Plaintiff has not filed a responsive concise statement as required by the Local Rules of Court and the Case Management Order, despite having had more than ample opportunity to have rectified the matter if she wished to do so. Accordingly, the Court deems all of the facts in Defendant's Concise Statement of Undisputed Material Facts (Docket No. 30) to be admitted by Plaintiff. On such a record, the Court will proceed to resolve Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

## III.   **RELEVANT FACTS**[5]

In April 2000, Plaintiff began working for Defendant as a city carrier. (Def's. Concise Statement of Undisputed Material Facts (hereinafter, "Def.'s SUMF") (Docket No. 30, ¶ 1).

---

[5]   The factual background is derived from the undisputed evidence of record and is viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Between 2010 and 2015, Plaintiff held numerous temporary assignments in various post offices located throughout Western Pennsylvania. (*Id.*, ¶ 2). As relevant here, Plaintiff was the Acting Manager at the Mars Post Office from January 2013 to February 2015 and then the Manager of that Post Office from February 2015 to November 2017. (*Id.*, ¶¶ 2, 3). Plaintiff currently works for Defendant as a Business Service Network representative. (*Id.*, ¶ 10).

From the time Plaintiff started working as the Acting Manager at the Mars Post Office until early 2016, Plaintiff's first-level supervisor was James Chesney, who was the Postmaster of the Cranberry/Mars Post Offices. (Def.'s SUMF, ¶ 5). From early 2016 until July 2016, Plaintiff's supervisor was now-retired Postmaster Karin Hansson. (*Id.*, ¶ 6). Plaintiff testified that she "didn't have a lot to do with" Ms. Hansson during the time when Ms. Hansson supervised her, and she did not recall having any kind of confrontation with Ms. Hansson. (*Id.*, ¶ 7). Plaintiff's second-line supervisor during the relevant time period was Manager of Post Office Operations ("POOM") Lawrence McClain. (*Id.*, ¶ 8). Plaintiff testified that she had a good relationship with Mr. McClain, explaining that she was his "go-to person for everything" after he became the POOM in her group, and Mr. McClain placed her in various developmental details including a position as Acting Officer in Charge in the Grove City Post Office. (*Id.*, ¶ 9).

At times during her employment, several employees accused Plaintiff of creating a hostile work environment. (Def.'s SUMF, ¶ 11). For instance, while Plaintiff was Manager at the Mars Post Office, employees at both the Cranberry and Mars Post Offices complained about hostile working conditions imposed by Plaintiff and Mr. Chesney. (*Id.*, ¶ 14). More specifically, in November and December 2015, rural mail carrier Justin Mingus filed multiple grievances and an unfair labor practice charge with the National Labor Relations Board regarding the hostile working conditions at those locations. (*Id.*). Mr. Mingus and another rural carrier, George Reffert, also

sent letters to John Phelan, the agency's Area Manager, Operations Support, complaining that Plaintiff and Mr. Chesney "[had] created a hostile work environment for the carriers, as well as the clerks and other management." (*Id.*, ¶ 15). Plaintiff testified that she believes the employees at the Cranberry and Mars Post Offices targeted her and Mr. Chesney because "we held them accountable for the positions" and "they were disciplined." (*Id.*, ¶ 20).

In order to investigate the employees' allegations concerning the hostile work environment at the Cranberry and Mars Post Offices, Kenneth Pawlowski, then Manager of the USPS Human Resources Department, initiated a "climate assessment" at those offices, which consisted of interviews that took place on January 5 and 6, 2016, and again on March 8 and 9, 2016.[6] (Def.'s SUMF, ¶ 21). Mr. Pawlowski sent a letter to Mr. Chesney explaining that a climate assessment was going to be conducted because of complaints received by the USPS, and Mr. Pawlowski also sent a letter notifying the employees at the Mars and Cranberry Post Offices about the climate assessment process. (*Id.*, ¶¶ 22, 23). Three management-level employees conducted the first set of interviews in January 2016, during which 23 employees were interviewed, including Plaintiff and Mr. Chesney. (*Id.*, ¶ 24). Following the first round of interviews, one of the interviewers drafted a report summarizing the findings, which included that "a majority of the employees interviewed said both [Mr. Chesney and Plaintiff] have a habit of addressing issues on the work floor through yelling and intimidation." (*Id.*, ¶¶ 27, 30).

---

6       Plaintiff testified that Mr. Pawlowski did not conduct an Initial Management Inquiry Process ("IMIP") to investigate the employee allegations because he was unaware of USPS procedures, but there otherwise was no reason why he chose to investigate by using a climate assessment rather than an IMIP. (Def.'s SUMF, ¶ 43). Mr. Pawlowski testified that an IMIP is an alternative process by which the USPS can investigate allegations of harassment. (*Id.*, ¶ 39). Mr. Pawlowski explained that an IMIP is "more utilized for one on one situations where there is harassment by one person against another. When you have a full office that is complaining . . . we used an assessment." (*Id.*, ¶ 40). In this case, Mr. Pawlowski decided to conduct a climate assessment, rather than an IMIP, because multiple employees lodged complaints about the conditions at the Cranberry and Mars Post Offices. (*Id.*, ¶ 41). As Mr. Pawlowski further explained, he had previously used a climate assessment during an investigation into the workplace environment at another post office in 2013 by using the same questions as were used in the climate assessment in Cranberry/Mars, which had been drafted by an employee at USPS's headquarters. (*Id.*, ¶ 42).

In January 2016, Mr. Chesney went out on an extended leave, and Plaintiff asked Mr. McClain if she could assume his position as the Acting Postmaster. (Def.'s SUMF, ¶ 31). Mr. McClain denied Plaintiff's request in light of the pending investigation into the workplace conditions at the Cranberry and Mars Post Offices, and Ms. Hansson was given the position of Acting Postmaster. (*Id.*).

On March 8 and 9, 2016, the climate assessment continued with a follow-up second round of interviews at the Cranberry and Mars Post Offices, which once again included Plaintiff. (Def.'s SUMF, ¶ 32). Following those interviews, one of the interviewers drafted a second summary of the findings. (*Id.*, ¶ 34). Subsequently, on March 30, 2016, Mr. Pawlowski sent a memorandum to Mr. Phelan summarizing the results of the climate assessment, which included recurring employee complaints of a negative work environment, frequent yelling, screaming and swearing by management on the work floor, yelling and belittling employees by both the Postmaster and Manager, and concerns of retaliation by management. (*Id.*, ¶ 35). Among other matters, the memorandum also noted that Plaintiff was sent to Management Essential Training.[7] (*Id.*). During an April 5, 2016 meeting with Mr. McClain, Mr. Pawlowski and others to discuss the results of the climate assessment, Plaintiff was advised of employees reporting during the interviews that she and Mr. Chesney yelled, screamed and overdisciplined. (*Id.*, ¶ 37).

On July 8, 2016, Plaintiff had an argument with Aric Burfield, a rural carrier, in front of other employees on the work floor of the Mars Post Office concerning his request for FMLA leave. (Def.'s SUMF, ¶ 45). On July 22, 2016, Acting Postmaster Hansson met with Plaintiff to discuss

---

7    Plaintiff's training records reflect that she attended "LEAD: Management Essentials" training in March and April 2016, which was described as follows:  "[P]articipants will be engaged in activities to motivate and positively influence others, recognize the effects of leadership, foster innovation and change, learn how to manage difficult conversations and will be able to practice and apply skills such as reflection, critical analysis and decision-making." (Def.'s SUMF, ¶ 36).

the July 8th incident involving Mr. Burfield.  (*Id.*, ¶ 48).  Ms. Hansson wrote a statement of their discussion, indicating that Plaintiff became very defensive when she was advised about the reason for the meeting and, when asked for her side of the story, Plaintiff responded, "[i]f Larry wants me fucking gone he just has to say so.  I am fucking tired of this.  I have done nothing wrong!"  (*Id.*).  Plaintiff continued that she was "fucking tired of the harassment," "fucking tired of this," was "not taking this," and walked out of the office.  (*Id.*).  Shortly thereafter, Plaintiff returned and called everyone together, at which point Ms. Hansson told her to calm down.  (*Id.*).  Plaintiff replied, "[g]o ahead and call the police and have them take me away.  If you want a hostile work environment I will show you a hostile work environment."  (*Id.*).  Ms. Hanson told Plaintiff to go out to the dock and, while there, Plaintiff stated, "I'm going to the District.  I'm sick of this!" and left the property.  (*Id.*).  However, before leaving, Plaintiff encountered rural carrier George Reffert on the dock and called him a "fucking asshole."  (*Id.*, ¶ 50).  Plaintiff admitted during her deposition that she used profanity in the workplace on July 22, 2016, which is a reasonable basis for discipline.  (*Id.*, ¶¶ 51, 52).

Following the incident on July 22, 2016, Plaintiff asked for and received six weeks of paid sick leave.  (Def.'s SUMF, ¶ 53).  When Plaintiff returned to work on September 12, 2016, she was assigned to work a detail in the Lyndora Post Office pending an investigation into the July 22nd incident.  (*Id.*).

On October 11, 2016, Ms. Hansson requested that Plaintiff be disciplined because of her conduct on July 22, 2016, and recommended that Plaintiff not be permitted to supervise any employees.  (Def.'s SUMF, ¶ 54).  On January 27, 2017, Plaintiff was issued a Notice of Proposed Adverse Action – Reduction in Grade and/or Pay by Proposing Official, Karin Hansson.  (*Id.*, ¶ 56).  Ultimately, a Letter of Decision was issued on October 26, 2017, sustaining the charge of

improper conduct and finding that demotion was warranted.  (*Id.*, ¶ 58).  Plaintiff was demoted from the position of Branch Manager with a yearly salary of $66,126 to the position of Custodian at the Pittsburgh National Distribution Center with a yearly salary of $56,101.  (*Id.*, ¶ 59).

On November 13, 2017, Plaintiff filed an appeal to the MSPB, arguing that her demotion was issued in retaliation for prior protected activity, including providing a witness statement on behalf of Mr. Chesney in his EEO case.  (Def.'s SUMF, ¶ 61).  Following a hearing, on June 11, 2018, the MSPB judge issued a decision upholding the decision to discipline Plaintiff based on her conduct of July 22, 2016, but mitigated  the discipline issued.  (*Id.*, ¶ 62).  In so ruling, the MSPB judge considered and rejected Plaintiff's retaliation claim, finding as follows:

> [W]hile the Plaintiff engaged in protected activity (a statement for Chesney's EEO case) under 5 U.S.C. § 2302(b)(9)(B), the relevant actors were not aware of this protected action. Furthermore, there is no doubt the agency has established that it would have taken the same action even in the absence of the Plaintiff's protected activity.

(*Id.*).  The MSPB decision contained a notice explaining that it would become final on July 16, 2018, unless Plaintiff filed a petition for review by that date, which she did not do.  (*Id.*, ¶¶ 63, 64).  As such, the MSPB decision became final on July 16, 2018, and Plaintiff did not seek further review by petitioning the EEOC to consider the decision or challenging it in federal court, despite having been notified that she could have done so.  (*Id.*).

Plaintiff initiated this lawsuit on February 25, 2019. (Docket No. 1).  In her Amended Complaint, Plaintiff asserts a gender discrimination claim and a retaliation claim based on five alleged "discriminatory events" that were raised in her EEO proceeding.  (Docket No. 11, ¶¶ 6, 11, 12).

Plaintiff testified that the basis for her gender discrimination claim is that, in or around November/December 2015, Mr. McClain offered another employee, Justin McCreadie, a

temporary developmental detail to work as the OIC in the Grove City Post Office, instead of offering the position to her.  (Def.'s SUMF, ¶ 66).  Mr. McClain testified that he chose Mr. McCreadie for that position because "he was doing really well" as a supervisor at Grove City, and the Postmaster at that location recommended him for the position.  (*Id.*, ¶ 68).  Plaintiff testified that Mr. McCreadie was offered the position over her because Mr. McClain believed (incorrectly, according to Plaintiff) that he produced better numbers (even though she never actually compared their numbers), and because Mr. McClain was close with Mr. McCreadie's father.  (*Id.*, ¶¶ 69, 70).  Plaintiff admitted that she had no evidence that she did not get the position because she is a woman.  (*Id.*, ¶ 71).

As to her retaliation claim, Plaintiff alleges in her Amended Complaint that Defendant retaliated against her "because of [her] protests of acts made unlawful under Title VII of the Civil Rights Act of 1964 and participation in civil rights claims, including participation in Chesney v. USPS . . . and [her] own prior claim of discrimination at Kelly v. USPS."  (Docket No. 11, ¶ 12).  Plaintiff testified that she submitted a statement in Mr. Chesney's EEO case on February 8, 2016, but she did not tell anyone other than him that she had done so.  (Def.'s SUMF, ¶¶ 74, 75).  Plaintiff contacted an EEO counselor regarding her own EEO complaint in May 2016, and her formal complaint was filed on August 11, 2016.  (*Id.*, ¶ 76).  Mr. McClain and Mr. Pawlowski only became aware that Plaintiff submitted a statement on Mr. Chesney's behalf and later filed her own EEO claim in the summer of 2016, when they received emails from an EEO ADR specialist.  (*Id.*, ¶ 77).  Ms. Hansson was not aware of either matter until November 2016.  (*Id.*, ¶ 78).

Plaintiff admitted during her deposition that some of the alleged "discriminatory events" listed in her Amended Complaint predated any of her EEO activity, including Mr. McClain's decision not to give her the Grove City detail in November/December 2015, Mr. McClain's

decision not to give her the Acting Postmaster position in January 2016 and the initiation of the climate assessment in January 2016. (Def.'s SUMF, ¶ 83). As to the alleged "discriminatory events" listed in Plaintiff's Amended Complaint that took place after she provided a statement in Mr. Chesney's EEO case,[8] first, Plaintiff admitted that the climate assessment at the Cranberry/Mars Post Offices was initiated in January 2016, before she provided a statement in Mr. Chesney's EEO Investigation, and that the second round of interviews conducted in March 2016 was a follow-up. (*Id.*, ¶¶ 97, 99). Second, Plaintiff was told by Ms. Hansson on July 22, 2016 that she was not approved to attend USPS route examination training because she gets motion sickness and otherwise did not actually intend to use the training. (*Id.*, ¶¶ 92-95). Third, Plaintiff admitted that she did not timely apply to the EAS Leadership Development (ELD) Program, and she was unaware of any other person who applied late for the program and was permitted to attend. (*Id.*, ¶¶ 85-87, 91). Finally, Plaintiff testified that the basis for her retaliation claim[9] was her placement in the Lyndora Post Office and that "they didn't investigate the false allegations." (*Id.*, ¶ 100). Mr. McClain testified that he did not place Plaintiff back at the Mars Post Office after she returned from sick leave because he did not want any more problems and there was an open spot in the Lyndora Post Office. (*Id.*, ¶ 101). Plaintiff testified that she never heard from anyone that she was transferred to Lyndora because she filed an EEO complaint. (*Id.*, ¶ 103). Plaintiff further testified that she believed Mr. McClain did not defend her against accusations by employees at the

---

8    Those alleged "discriminatory events" include the following: in March 2016, management conducted "climate surveys" in Plaintiff's office and did not properly defend her against the union's claims against her; on July 22, 2016, she was informed that she would not be attending training scheduled for July 26-28, 2016; her request to be included in the EAS Leadership Development (ELD) Program was denied on July 27, 2016;  and as of September 9, 2016, she was not allowed to return to her position as the Mars Manager and was involuntarily assigned to the Lyndora Post Office. (Docket No. 11, ¶ 6.b).

9    To support her claim that she was retaliated against due to her EEO activity, Plaintiff testified that certain "comparators  . . . had similar situations to [her] and [were] not . . . demoted." (Def.'s SUMF, ¶ 106). Plaintiff admitted, however, that the comparators she identified were not supervised by Mr. McClain. (*Id.*, ¶¶ 108, 111-113).

Cranberry and Mars Post Offices because he believed that they were telling the truth that she had created a hostile work environment.  (*Id.*, ¶ 104).

## IV.   STANDARD OF REVIEW

Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To withstand summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  *Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations, but rather is limited to deciding whether there are any disputed issues that are both genuine and material.  *Id.* at 249.

If the moving party carries its burden under Rule 56, the non-movant must identify "specific facts which demonstrate that there exists a genuine issue for trial."  *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicions in attempting to survive summary judgment.  *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325).  The non-movant must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial."  *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (citation omitted).

## V.   ANALYSIS

Title VII prohibits employment discrimination in the federal sector because of, *inter alia*, an individual employee's sex.  *See* 42 U.S.C. § 2000e–16(a).  Title VII also prohibits employers

from retaliating against employees for complaining about harassment or discrimination in the workplace. *See id.* § 2000e-3(a); *see also Phillips v. Donahoe*, Civ. No. 12-410, 2013 WL 5963121, at *14-15 (W.D. Pa. Nov. 7, 2013) (private sector anti-retaliation provisions of Title VII apply to federal sector employees).

Absent direct evidence of discrimination or retaliation, as here,[10] Title VII discrimination and retaliation claims are analyzed according to the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973): (1) first, the plaintiff must establish a prima facie case of discrimination or retaliation; (2) then, the burden shifts to the employer to advance a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action; (3) and finally, the plaintiff is afforded an opportunity to show that the employer's proffered reason was a pretext for discrimination or retaliation. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

## A. **Defendant is Entitled to Summary Judgment on Plaintiff's Gender Discrimination Claim.**

Plaintiff alleges in her Amended Complaint that Defendant discriminated against her because of her gender. (Docket No. 11, ¶ 11). Plaintiff's Amended Complaint does not otherwise contain allegations to describe or support her gender discrimination claim. Plaintiff testified at her deposition that the basis for her gender discrimination claim is that, in or around November/December 2015, Mr. McClain offered another employee, Justin McCreadie, a temporary developmental detail to work as the OIC in the Grove City Post Office, instead of offering the position to her. (Def.'s SUMF, ¶ 66).

---

10      Evidence is direct if "it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (internal quotation marks and citation omitted). No such direct evidence exists in this case.

Defendant argues that Plaintiff's gender discrimination fails as a matter of law because she cannot meet her prima facie case.  (Docket No. 29 at 7-9).  Even if Plaintiff could do so, Defendant contends that it had a legitimate, non-discriminatory basis for not selecting her for the Grove City position, and she has not shown the that the basis for Defendant's decision was pretextual.  (*Id.* at 9-11).

1. **Plaintiff Has Not Established a Prima Facie Case of Gender Discrimination.**

To state a prima facie case of gender discrimination, a plaintiff must show the following: 1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably.[11]  *Brown-Baumbach v. B&B Auto., Inc.*, 437 F. App'x 129, 134 (3d Cir. 2011) (citations omitted).  For purposes of the instant Motion, Defendant does not dispute that Plaintiff satisfies the first three elements of her prima facie case.  (Docket No. 29 at 7).

Nonetheless, Plaintiff has not met her burden of making a prima facie case of gender discrimination because she has not shown circumstances exist that give rise to an inference of unlawful discrimination.   To that end, Plaintiff has not introduced any evidence of male comparators who were treated more favorably under similar circumstances.  *See Drummer*, 455 F. Supp. 3d at 168 (plaintiff may introduce comparator evidence to establish fourth element of prima facie case).  Further, she has not pointed to any circumstantial evidence that shows a causal nexus between her membership in a protected class and the decision not to assign her to the Grove City

---

11      To establish the fourth element, a plaintiff may either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action."  *Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020).

position. *See id.* (plaintiff may establish fourth element of prima facie case by relying on circumstantial evidence to show causal nexus between membership in protected class and adverse employment action.).

The evidence of record fails to show that Plaintiff's non-selection for the Grove City position was in any way related to her gender. Mr. McClain testified that he chose Mr. McCreadie for that position because "he was doing really well" as a supervisor at Grove City, and the Postmaster at that location recommended him for the position. (Def.'s SUMF, ¶ 68). Plaintiff admitted that she had no evidence that she did not get the position because she is a woman.[12] (*Id.*, ¶ 71). Rather, Plaintiff testified that Mr. McCreadie was offered the position over her because Mr. McClain believed (incorrectly, according to her) that he produced better numbers (even though she never actually compared their numbers), and because Mr. McClain was close with Mr. McCreadie's father. (*Id.*, ¶¶ 69, 70). Plaintiff's testimony on these points does not establish a prima facie case of gender discrimination. First, simply asserting that Mr. McClain was wrong in his assessment of Mr. McCreadie's numbers is not enough to survive summary judgment. *See Fuentes*, 32 F.3d at 765 (a plaintiff cannot simply show that the employer's decision was wrong or mistaken). Second, Plaintiff's belief that nepotism played a role in Mr. McClain selecting Mr. McCreadie does not advance her gender discrimination claim. *See Parks v. Rumsfeld*, 119 F. App'x 382, 385 (3d Cir. 2005) ("friendship or cronyism" is not a basis for relief under Title VII); *Johnson v. Hershey Creamery Co.*, Civ. No. 1:11-cv-00776, 2013 WL 877130, at *8 (M.D. Pa.

---

[12]    Plaintiff testified that she had a good relationship with Mr. McClain, explaining that she was his "go-to person for everything" after he became the POOM in her group, and Mr. McClain placed her in various developmental details including a position as Acting Officer in Charge in the Grove City Post Office. (Def.'s SUMF, ¶ 9). Given Plaintiff's own description of her working relationship with Mr. McClain, it would be illogical to conclude that he relied on her as his "go-to person for everything" and provided her with various employment opportunities and then suddenly decided to discriminate against her because of her gender. *See DeMary v. Kennedy Health Sys.*, Civ. No. 11-05984, 2014 WL 3748591, at *8 (D.N.J. July 30, 2014) (observing that it is "illogical" to conclude that a decision-maker who hired and supervised plaintiff for over eight years, consistently rated her as meeting or exceeding expectations and praised her work suddenly decided to discriminate against her because of her race).

Mar. 8, 2013) (". . . [T]here is nothing unlawful about basing employment decisions on partially subjective criteria, including nepotism."); *Bradley v. Aria Health*, Civ. No. 10-5633, 2011 WL 2411026, at *3 (E.D. Pa. June 15, 2011) ("nepotism and/or favoritism" are not actionable under Title VII).

Because Plaintiff has not met her prima facie burden, the Court would grant Defendant's Motion for Summary Judgment on that basis alone. As discussed below, however, even if Plaintiff had made a prima facie case of gender discrimination, the Court still would grant Defendant's Motion because it has met the relatively light burden of offering a legitimate, non-discriminatory reason for not selecting her for the Grove City position, which Plaintiff has failed to rebut.

### 2. Defendant Has Offered a Legitimate, Non-Discriminatory Reason for Not Selecting Her for the Grove City Position.

At the second step of *McDonnell Douglas*, an employer's burden of production is relatively light and is satisfied by introducing evidence which, taken as true, would permit the conclusion that there was a legitimate, non-discriminatory reason for the unfavorable employment decision. *Fuentes*, 32 F.3d at 763. Relevant here in a failure to hire/promote case, "[a]n employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions. . . ." *Carter v. N.J. Dep't of Human Servs.*, Civ. No. 18-12469, 2020 WL 3427986, at *8 (D.N.J. June 23, 2020) (quoting *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1172 (D.N.J. 1996)). "Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective business decision of the employer, nor set its own employment standards for the employer." *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 218 (E.D. Pa. 2015) (citations omitted). The Court finds that Defendant's reason for selecting Mr. McCreadie over Plaintiff for the Grove City position is legitimate as discussed above, shifting the burden to Plaintiff to show pretext.

### 3. <u>Plaintiff Has Failed to Demonstrate that Defendant's Legitimate Reason was a Pretext for Gender Discrimination.</u>

Given that Defendant has met its burden at step 2 of *McDonnell Douglas*, the burden shifts back to Plaintiff to show that the stated reason for the adverse employment action was a pretext for gender discrimination.  To defeat summary judgment at the pretext stage, a plaintiff must point to some evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  *Fuentes*, 32 F.3d at 764 (citations omitted).

Under the first prong of *Fuentes*, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and infer that the defendant did not act for the stated non-discriminatory reasons.  *Fuentes*, 32 F.3d at 765. Here, Plaintiff believes the numbers that Mr. McClain relied on in his decision to select Mr. McCreadie for the Grove City position were inaccurate.  (Def.'s SUMF, ¶ 69).  As discussed, to the extent Plaintiff disagrees with Defendant's decision, simply arguing that Defendant was wrong is not enough to survive summary judgment.  *See Fuentes*, 32 F.3d at 765 (a plaintiff cannot simply show that the employer's decision was wrong or mistaken).

A plaintiff still might demonstrate pretext under the second prong of *Fuentes* if she can demonstrate that discrimination "was more likely than not a motivating or determinative cause of the adverse employment action."  *Fuentes*, 32 F.3d at 762.  Pretext can be shown this way by producing evidence that: 1) the employer previously has discriminated against the plaintiff; 2) the employer has discriminated against other persons; or 3) the employer has treated more favorably similarly situated employees outside of the plaintiff's protected class.  *See id.* at 765.  Plaintiff has

21

not presented evidence to show any of these scenarios, and thus has failed to establish pretext under the second prong of *Fuentes*.

In sum, Plaintiff must point to evidence from which a fact-finder may reasonably have disbelieved Defendant's reason for its action. Here, Plaintiff has offered no evidence that Defendant did not select her for the Grove City position because of her gender. Plaintiff's gender discrimination claims fails as a matter of law, and summary judgment will be entered in favor of Defendant on that claim.

**B. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim.**

Plaintiff also alleges that the USPS retaliated against her for providing a statement in Mr. Chesney's EEO case in February 2016 and for filing her own EEO complaint in May 2016. (Docket No. 11, ¶ 12). Defendant argues that Plaintiff has failed to establish a prima facie case of retaliation. (*See* Docket No. 29 at 11-12). Even if Plaintiff had done so, Defendant asserts that it had legitimate, non-retaliatory bases for any actions taken after Plaintiff allegedly engaged in protected activity, which Plaintiff has not shown were a pretext for retaliation. (*See id.* at 12-17).

**1. Plaintiff Has Not Established a Prima Facie Case of Retaliation.**

To state a prima facie case of retaliation, a plaintiff must establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41.

Defendant does not appear to dispute that Plaintiff engaged in protected activity by providing a statement in Mr. Chesney's EEO case in February 2016 and filing her own EEO complaint in May 2016 as alleged in the Amended Complaint. (Docket No. 11, ¶ 12). Defendant contends, however, that Plaintiff has not established a causal connection between the protected

activity and an adverse employment action, *i.e.*, the alleged "discriminatory events" listed in her Amended Complaint.  (Docket No. 29 at 11-12).  To reiterate, those alleged "discriminatory events" include the following: in November/December 2015 and in January 2016, her request for higher level details was denied; in January and March 2016, management conducted "climate surveys" in Plaintiff's office and did not properly defend her against the union's claims against her; on July 22, 2016, she was informed that she would not be attending training scheduled for July 26-28, 2016; her request to be included in the EAS Leadership Development (ELD) Program was denied on July 27, 2016;  and as of September 9, 2016, she was not allowed to return to her position as the Mars Manager and was involuntarily assigned to the Lyndora Post Office.  (Docket No. 11, ¶ 6.b).

As an initial matter, Plaintiff admitted during her deposition that some of the alleged "discriminatory events" list in her Amended Complaint predated any of her EEO activity, including Mr. McClain's decision not to give her the Grove City detail in November/December 2015, Mr. McClain's decision not to give her the Acting Postmaster position in January 2016 and the initiation of the climate assessment in January 2016.  (Def.'s SUMF, ¶ 83).  As such, she can not establish a prima facie case of retaliation based on any of those alleged adverse employment actions.  *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (observing that it is not possible to meet the retaliation standard when the adverse action precedes the protected activity).

### a.  Adverse Employment Action

With regard to the second element of a prima facie case, a plaintiff claiming retaliation must show that "a reasonable employee would have found the challenged action materially adverse [meaning] it well might have dissuaded a reasonable worker from making or supporting a charge

of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).  The "reasonable employee" aspect of this standard is an objective standard that is also used in other Title VII contexts such as the constructive discharge doctrine and hostile work environment doctrine, and the "material adversity" aspect of this standard requires courts to "separate significant from trivial harms."  *Id.* Additionally, the significance of any given alleged act of retaliation "will often depend upon the particular circumstances.  Context matters."  *Id*. at 69; *see also Moore*, 461 F.3d at 341.  Here, the Court finds that none of the conduct claimed by Plaintiff which occurred after her protected activity constitutes a materially adverse employment action pursuant to this standard.

First, as to the continuation of the climate survey in March 2016, courts have held that an employer's investigation into an employee's conduct  does not constitute an adverse employment action.  *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569-70 (2d Cir. 2011) (three fact-finding investigations into employee's conduct that could have led to disciplinary action were not materially adverse employment actions since there was good reason for employer to have initiated them, and they occurred over course of multiple months, consisted only of brief inquiries, and resulted in no discipline); *see also, e.g.*, *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228 (E.D.N.Y. 2016) ("[I]nvestigations alone are not adverse employment actions."); *Vandesande v. Miami-Dade County.*, 431 F. Supp. 2d 1245, 1254 (S.D. Fla. 2006) ("An internal investigation is not an adverse employment action when it does not result in a significant change in employment status, such as termination, demotion, failure to promote, significant reassignment or a significant change in benefits.").  Here, Defendant had good reason to undertake this climate assessment to investigate employee allegations of a hostile work environment at the Cranberry and Mars Post Offices prompted by recurring employee complaints of a negative work

environment, frequent yelling, screaming, and swearing by management on the work floor, yelling and belittling employees by both Mr. Chesney and Plaintiff, and concerns of retaliation by management.  (Def.'s SUMF, ¶ 35).  Following the results of this climate assessment, Plaintiff received Management Essential Training that was beneficial to both her own professional development as well as to improving the working environment generally.  *See supra* n. 7.  Plaintiff was not disciplined because of this climate assessment despite what it revealed, and she points to no record evidence to indicate any significant change in her employment status or benefits.  Accordingly, there is no basis to conclude that this climate assessment and the consequent training Plaintiff received was materially adverse.

Similarly, Plaintiff's claim that "management . . . did not properly defend her against the union's claims against her," (Docket No. 11, ¶ 6.b.4), which relates to employees' accusations that she and Mr. Chesney created a hostile work environment does not constitute a materially adverse employment action.  In the first instance, this allegation is contradicted by Plaintiff's deposition testimony that she believed Mr. McClain did not defend her against accusations by employees at the Cranberry and Mars Post Offices because he believed that they were telling the truth that she had created a hostile work environment.  (Def.'s SUMF, ¶ 104).  Nonetheless, courts have held that a supervisor's or employer's siding against an employee, with nothing more, does not rise to the level of a materially adverse employment action.  *See Vance v. Ball State Univ.,* 646 F.3d 461, 475 (7th Cir.2011) ("No reasonable jury could find that the delivery of a verbal warning, based on a complaint from a coworker, constitutes an adverse employment action or creates an objectively hostile work environment."), *aff'd*, 570 U.S. 421 (2013); *Stronach v. Va. State Univ.*, 631 F. Supp. 2d 743, 751 (E.D. Va. 2008) (holding that a university's siding with a student against a professor in a grading dispute "may have been embarrassing or even infuriating for [the professor], but ... it

did not alter the conditions of his employment"); *Beverley v. 1115 Health & Benefits Fund*, 420 F. Supp. 2d 47, 58 (E.D.N.Y. 2005) (the fact that the plaintiff's manager "sided with" the plaintiff's coworker in a dispute with the plaintiff "d[id] not rise to the level of an 'adverse employment action' ").

In addition, the denial of Plaintiff's requests to attend two training programs in July 2016 does not constitute a materially adverse employment action. "Denial of training opportunities does not constitute an adverse employment action without evidence that the employee's 'work suffered or that her advancement or earning potential was affected.'" *Cross v. Brennan*, Civ. No. 12-2670, 2016 WL 4689042, at *7 (D.N.J. Sept. 6, 2016) (quoting *Pagan v. Gonzalez*, 430 F. App'x 170, 172 (3d Cir. 2011)); *see also Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 375 (D.N.J. 2006) (disparity in training did not rise to the level of an adverse employment action where "[t]here is no evidence that a certain level of training was required for promotion, retention or other benefits."). Here, Plaintiff does not allege in her Amended Complaint that, as a result of not attending the training sessions, she was deprived of the opportunity to be promoted to any particular positions which were available for employees who completed the training. Moreover, Plaintiff has pointed to no evidence of record indicating that her work suffered or that her advancement or earning potential was affected as a result of not attending the requested trainings. In this context, the Court finds that the denial of these two discrete training sessions are not significant and thus would not dissuade a reasonable worker from making or supporting a discrimination charge.

Finally, Plaintiff's re-assignment to the Lyndora Post Office similarly does not qualify as a materially adverse employment action. *See Stewart v. Union County Bd. of Educ.*, 655 F. App'x 151, 157 (3d Cir. 2016) ("Employment actions such as lateral transfers and changes of title or

reporting relationships have generally been held not to constitute adverse employment actions."); *O'Neal v. Brownlee*, No. 03-5535, 2004 WL 2827052, at *6 (E.D. Pa. Dec. 9, 2004) ("While in certain circumstances a transfer or reassignment may be a materially adverse action, . . . a purely lateral transfer, which does not involve a change in pay or a demotion in any other form, does not constitute an adverse employment action."). In this case, Plaintiff has failed to adduce evidence from which a reasonable factfinder could conclude that the position at the Lyndora Post Office was inferior to, rather than merely different from, her position at the Mars Post Office. Thus, this transfer is not significant enough to dissuade a reasonable worker from making or supporting a discrimination charge and so Plaintiff has failed to create a genuine issue of material fact as to whether her re-assignment to Lyndora constituted a materially adverse employment action. *See Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 261 (3d Cir. 2006).

In sum, none of the "discriminatory events" alleged by Plaintiff in her Amended Complaint constitute a materially adverse employment action for purposes of establishing a prima facie case of retaliation. Even if they did qualify as such, she fails to establish the third element of a prima facie case of retaliation as next discussed.

### b.  Causal Connection

As to the third element of a prima facie case, a plaintiff must show that there was a causal connection between her participation in the protected activity and the adverse employment action. *See Moore*, 461 F.3d at 340-41. To do this, she must produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (emphasis in original) (citation omitted).

A plaintiff may rely on "a broad array of evidence" to show the requisite causal link.

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citation omitted). Such evidence may include a temporal proximity between the protected activity and the adverse action, intervening antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action or any other evidence that supports an inference of retaliatory animus. *See id.* at 232–33.

Plaintiff has not produced evidence from which a reasonable factfinder could conclude that providing a statement in Mr. Chesney's EEO matter in February 2016 or her own EEO activity in May 2016 was the *likely reason* that her requests to attend two training programs were denied and she was transferred to the Lyndora Post Office. First, there is not an unusually suggestive temporal proximity between Plaintiff's EEO activity in February and May 2016, and the decision to deny her training requests in July 2016 or transfer her to the Lyndora Post Office in September 2016. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004) (finding no causal connection where over two months elapsed between protected activity and adverse employment action); *Gillyard v. Geithner*, 81 F. Supp. 3d 437, 444 (E.D. Pa. 2015) (finding temporal proximity of two months "is not close enough to support, on its own, an inference of retaliation"). Moreover, as previously discussed, the conduct about which Plaintiff otherwise complains does not constitute materially adverse employment actions, and Plaintiff has offered no evidence of antagonism or inconsistencies in Defendant's articulated reasons for the actions it took. For these reasons, Plaintiff has not met her prima facie burden.

Because Plaintiff has not met her prima facie burden, the Court would grant Defendant's Motion for Summary Judgment on that basis alone. However, even if Plaintiff had made a prima facie case of retaliation, the Court still would grant Defendant's Motion because it has met the relatively light burden of offering legitimate, non-retaliatory bases for the employment actions at

issue, which Plaintiff has failed to rebut.

###    2.    Defendant Has Offered Legitimate, Non-Retaliatory Reasons for Its Actions, Which Plaintiff Has Failed to Show Were a Pretext for Retaliation.

Defendant has satisfied its relatively light burden of offering legitimate, non-retaliatory reasons for the actions it took after Plaintiff engaged in protected activity.  First, Defendant had a legitimate basis to conduct a climate assessment in order to investigate employee complaints regarding hostile working conditions at the Cranberry and Mars Post Offices under the management of Mr. Chesney and Plaintiff.  As noted, the climate assessment was initiated in January 2016, before Plaintiff even engaged in any protected activity, and the second follow-up session was completed in March 2016.  Plaintiff's own belief that Defendant should have conducted an IMIP instead of a climate assessment does not establish pretext.  *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F.Supp.3d 744, 768 (W.D. Pa. 2016) ("A challenge to the sufficiency or propriety of the investigation is inadequate to establish pretext.") (citing *Money v. Provident Mut. Life Ins. Co.*, 189 F. App'x 114, 116–117 (3d Cir. 2006) (finding plaintiff's "naked credibility attack" on the adequacy of an investigation insufficient to establish pretext)). As Mr. Pawlowski explained, an IMIP is utilized where harassment is claimed by one person against another, whereas a climate assessment is used when complaints are lodged by multiple employees, as was the case at the Cranberry and Mars Post Offices.  (Def.'s SUMF, ¶¶ 40, 41).

Next, Plaintiff's complaint that management did not "properly defend" her against accusations by employees at the Cranberry and Mars Post Offices does not establish pretext.  As discussed, Plaintiff testified that she believed Mr. McClain did not defend her against the employees' accusations because he believed that they were telling the truth that she had created a hostile work environment.  (Def.'s SUMF, ¶ 104).

Additionally, Plaintiff's complaints that she was not selected for two training programs in July 2016 does not show pretext.  Notably, Plaintiff admitted that she did not timely apply to the EAS Leadership Development (ELD) Program, and she was unaware of any other person who applied late for the program and was permitted to attend.  (Def.'s SUMF, ¶¶ 85-87, 91); *Modugno v. Digital Equip. Corp.*, Civ. No. 91–580–M, 1994 WL 258742, at *5 (D.N.H. Mar. 8, 1994) (observing that missing application deadline is a legitimate, non-discriminatory reason for denying entry to training program).  As to the route examination training, Ms. Hansson told Plaintiff that she was not approved to attend the program because she gets motion sickness and otherwise did not actually intend to use the training.  (Def.'s SUMF, ¶¶ 92-95).  Here again, Defendant's decision to not select Plaintiff for a training program she did not intend to use is legitimate and fails to establish pretext.

Finally, Plaintiff's claim that her transfer to the Lyndora Post Office was retaliatory is not supported by the evidence or record and does not establish pretext.  Plaintiff admitted that she never heard from anyone that she was transferred to Lyndora because she filed an EEO complaint.  (Def.'s SUMF, ¶ 103).  Mr. McClain testified that he did not place Plaintiff back at the Mars Post Office after she returned from sick leave following her outburst in July 2016 because he did not want any more problems and there was an open spot in Lyndora.  (*Id.*, ¶ 101).  Plaintiff has pointed to no evidence to dispute Mr. McClain's explanation or to otherwise show that her placement in Lyndora was in retaliation for her protected activity.

Given that the Defendant has met its burden at step 2 of *McDonnell Douglas*, the burden shifts back to Plaintiff to show that the stated reasons were a pretext for retaliation.  She has failed to do this under either prong of *Fuentes*.  Under the first prong, Plaintiff has not shown that the stated reasons for any of Defendant's actions are unworthy of credence.  Nor has she shown under

the second prong that retaliation "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. On that point, Plaintiff has not presented evidence that Defendant previously retaliated against her or others, nor has she shown that Defendant treated more favorably similarly situated employees who did not engage in protected activity. To that end, Plaintiff has not identified any similarly situated comparator who did not engage in protected activity, but who received more favorable treatment.[13] Plaintiff's bare assertion that she was treated less favorably does not suffice to establish pretext.

## C.   Plaintiff is not Entitled to Partial Summary Judgment on Either of Her Asserted Claims.

In moving for partial summary judgment, Plaintiff asks the Court to apply the doctrine of collateral estoppel to findings made by an administrative law judge in her MSPB proceeding. (*See generally* Docket Nos. 33, 34). In response, Defendant argues that Plaintiff's Motion for Partial Summary Judgment should be denied because the MSPB judge ultimately found in Defendant's favor as to Plaintiff's claim of retaliation. (Docket No. 36 at 3-6). Putting aside that Plaintiff's Motion for Partial Summary Judgment does not comply with the Case Management Order and Local Rule 56.B.1 and B.3 because it is not accompanied by a concise statement of undisputed

---

[13]     To support her claim that she was retaliated against due to her EEO activity, Plaintiff testified at her deposition that certain "comparators . . . had similar situations to [her] and [were] not . . . demoted." (Def.'s SUMF, ¶ 106). Initially, Plaintiff challenged her demotion through the MSPB process and received a decision holding that she was properly disciplined but her discipline was mitigated. (*Id.*, ¶¶ 61, 62). She did not file a petition for review of that decision, and thus it became final on July 16, 2018. (*Id.*, ¶¶ 63, 64). At that point, Plaintiff took no further action on the matter and therefore is unable to challenge her demotion decision here, as explained in Defendant's Memorandum. (*See* Docket No. 29 at 18-20).

Nonetheless, Plaintiff's comparator evidence does not advance her retaliation claim. To be considered similarly situated, comparator employees "must be similarly situation in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id.* Plaintiff is not similar in "all relevant respects" to the comparators she identified because, as she acknowledged at her deposition, they all were supervised by someone other than Mr. McClain. (Def.'s SUMF, ¶¶ 108, 111-113).

material facts or an appendix,[14] she is not entitled to partial summary judgment on either of her claims.

Initially, the Court observes that "unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings." *Roth v. Koppers Indus., Inc.*, 993 F.2d 1058, 1062 (3d Cir. 1993) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986)). Pursuant to this authority, the MSPB judge's decision would not have collateral estoppel effect here because Plaintiff did not timely petition the EEOC to consider the decision nor did she challenge it in federal court after the decision became final on July 16, 2018, despite having been notified that she could have done so. (Def.'s SUMF, ¶¶ 63, 64). Nonetheless, even if the MSPB judge's decision would have any collateral estoppel effect, it does not advance Plaintiff's claims in this case. The MSPB judge upheld the decision to discipline Plaintiff based on her conduct on July 22, 2016, but mitigated the discipline issued. (*Id.*, ¶ 62). In so ruling, the MSPB judge considered and rejected Plaintiff's retaliation claim, finding that while she engaged in protected activity, the relevant actors were not aware of it, and "there is no doubt the agency has established that it would have taken the same action even in the absence of the Plaintiff's protected activity." (*Id.*). Otherwise, the MSPB decision is not relevant to Plaintiff's gender discrimination claim. *See* Docket No. 48-1 at 3 (summarizing issues to be considered in MSPB proceeding). For these reasons, Plaintiff is not entitled to partial summary judgment as to either of the claims alleged in her Amended Complaint.

---

14      To the extent Plaintiff purports to rely on findings made by the MSPB judge as a substitute for filing a concise statement of undisputed material facts and an appendix, such a practice is unacceptable as it fails to comply with the Case Management Order and Local Rule 56.B.1 and 56.B.3.

VI.     **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Deem as Admitted its Statement of Material Facts and to Strike Plaintiff's Untimely Response to its Motion for Summary Judgment (Docket No. 43) is granted as to the request to deem as admitted Defendant's Statement of Material Facts.  Additionally, Defendant's Motion for Summary Judgment (Docket No. 28) is granted and judgment will be entered in favor of Defendant with respect to all claims set forth in Plaintiff's Amended Complaint.  Finally, Plaintiff's Motion for Partial Summary Judgment (Docket No. 33) is denied.

An appropriate Order follows.

_W. Scott Hardy_
W. Scott Hardy
United States District Judge

Date:   March 10, 2021

cc/ecf:  All counsel of record